# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| COREY ALLEN BASON, | ) | CASE NO. 1:19-cv-1627 |
| | ) | |
| PLAINTIFF, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| RYAN STOVER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Corey Allen Bason ("Bason"), a state prisoner, brings this action pursuant to 42 U.S.C. § 1983 against defendants Ryan Stover ("Stover"), Warden Douglas Fender ("Fender"), Lake Erie Correctional Institution ("LECI"), and Core Civic (collectively, "defendants"). (Doc. No. 1.)

For the reasons that follow, this action is dismissed.

**A. Background**

Bason is a state prisoner confined at LECI. He alleges that on February 11, 2019, it was rumored in his unit that he had engaged in a sexual act with another inmate, Jordan Neal ("Neal"). (*Id.* ¶ 1.) That rumor led to a fight between Neal and another inmate, "Young."

Defendant Stover is an institutional correctional counselor employed by defendant Core Civic, which operates LECI under contract with the Ohio Department of Rehabilitation and Corrections. (*Id.* at 2-3.[1]) Bason alleges that Stover came to Bason's housing unit to handcuff Neal for fighting and announced: "That is what happens when you get caught sucking dick on

---
[1] Page number references are to the page identification number generated by the Court's electronic docketing system.

the back wall." (*Id*. ¶ 2.) Stover did not identify Bason by name and Bason does not allege that Stover was the source of the original rumor. But Bason claims that with Stover's statement, "all eyes turned to Plaintiff" who was embarrassed because of Neal's affiliation with the Heartless Felons gang and fearful for his safety. (*Id*. ¶ 3.) Bason claims that after Stover's statement, rumors of his alleged sexual conduct with Neal spread through LECI and he was fearful that the Heartless Felons would act on their dislike for gays. (*Id*. ¶¶ 4-6.)

Bason contends that the rumors of his conduct with Neal were false, and he asked the unit manager, Jesse Harsin ("Harsin") to review camera footage regarding the incident in question. According to the complaint, Harsin did so and "saw for himself" that Bason and Neal "were just standing and talking." Bason asked Stover to make an announcement that the rumors were false, but Stover refused to do so.[2] (*Id*. ¶¶ 7-8.) Bason claims he was involved in three unreported fights with other inmates stemming from Stover's statement. (*Id*. ¶ 10.) As a result of "this ongoing crisis," Plaintiff states that he does not feel safe at LECI. (*Id*. ¶ 11.)

Bason met with Mr. Sackett ("Sackett"), Inspector of Institutional Services, who advised Bason to file an informal complaint to begin the grievance procedure, which he did. (*Id*. ¶ 9.) But Bason was not satisfied with the response that Stover was spoken to about the issue, stating that Stover's statement "caused massive chaos and stress in my life … and defamed my character." Bason responded to Sackett that Stover must make another public announcement that his first statement was not true. (*Id*. ¶¶ 13-14.) Bason did not receive the relief requested and

---

[2] Bason claims that Stover was later terminated on the grounds that he is a member/supporter of a white supremacist group. (*Id*. ¶ 10.)

filed an appeal to the Office of the Chief Inspector, indicating that other inmates "are still to this very day talking about, questioning me, and taunting me about the announcement [Stover] made." (*Id.* ¶¶ 15-16.) Bason's appeal was unsuccessful: "The Inspector investigated your complaint which did not yield proof to support your claim. Furthermore, there is no evidence that demonstrates any harm was done to you or that some form of action against you that would be considered egregious or continuous as outlined in AR 5120-0-04." (*Id.* ¶ 17.)

Based upon these facts, Bason assets three claims for relief. In Claim No. I, Bason claims that in violation of the Eighth Amendment, Stover acted with deliberate indifference by making an inappropriate homosexual comment in the presence of homophobic inmates and putting Bason at a substantial risk of serious physical harm. (*Id.* at 8.) Bason alleges that he is openly transgender and many LECI staff and inmates are homophobic. (*Id.* ¶¶ 20, 22.) Bason asserts that Stover's statement "created a situation that could have resulted in substantial risk of serious physical harm, or even death[,]" and "created an atmosphere that placed Plaintiff [at] risk of imminent personal injury of other serious or irreparable harm." (*Id.* ¶ 24.) In addition to violating his rights under the Eight Amendment, Bason claims that Stover's conduct was inconsistent with the Ohio Department of Rehabilitation and Corrections ("ODRC") policies concerning LGBTI inmates. (*Id.* ¶ 28.)

In Claim No. II, Bason asserts that all defendants acted with deliberate indifference in failing to protect him from a substantial risk of harm, constituting cruel and unusual punishment. (*Id.* at 12.) Bason alleges that the fight between Neal and Young before Stover's statement demonstrated that "the crisis was real[,]" but no LECI official met with him to determine if he was in imminent danger of death or serious physical harm. (*Id.* ¶ 31.) With respect to the three unreported fights Bason alleges took place with gang members because of Stover's statement, he

3

claims that if defendants had protected him, he would not have been harmed[3] or threatened by other inmates. (*Id*. ¶¶ 32, 33.)

In Claim No. III, Bason asserts that all defendants discriminated against him because of his sexual orientation in violation of his constitutional right to equal protection under the Fourteenth Amendment. (*Id*. at 13.) He alleges that the defendants "go out of their way" to protect non-gay inmates when rumors place these inmates in imminent danger of death or serious physical harm by placing them in a protective housing unit or consulting with them on how to proceed. (*Id*. ¶ 35.)

For relief, Bason asks this Court to (1) declare that defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution and ODRC policy concerning LGBTI inmates, (2) order defendants to transfer him to a different institution, (3) award him compensatory damages in the amount of $25,000.00 against each defendant, and (4) award him punitive damages in the amount of $100,000.00 against each defendant. (*Id*. ¶¶ 36-39.)

**B. Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B), the Court must review and dismiss an *in forma pauperis* complaint that fails to state a claim upon which relief may be granted. *Hill v. Lappin,* 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that *Twombly /Iqbal* standard applies to review of prisoner complaints under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim). To pass this threshold review, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the Court to draw the

---

[3] Bason does not allege the nature of the harm he incurred as a result of these fights.

reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Its "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

When conducting this analysis, this Court accepts as true "all the factual allegations in the complaint" but not "legal conclusion[s] couched as ... factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). *Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and must be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520 (1972)); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (*pro se* complaints are entitled to liberal construction) (citations omitted). That said, the Court is not required to conjure unpleaded facts or construct claims on Bason's behalf and he must allege "more than bare assertions of legal conclusions ... to satisfy federal notice pleading requirements." *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted).

### C. Analysis

Bason brings this action pursuant to 42 U.S.C. § 1983. In order to state a § 1983 claim, he must allege that a person acting under color of state law deprived him of his rights, privileges, or immunities secured by the United States Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### *LECI, Core Civic, and Fender are not liable for Stover's alleged unconstitutional conduct*

As an initial matter, LECI is not a proper party to this action. It is not a legal entity capable of being sued, but a facility operated by Core Civic. *See Nolan v. Lake Erie Corr. Inst.*, No. 1:11 CV 2227, 2012 WL 33023, at *3 (N.D. Ohio Jan. 6, 2012) (citing *Petty v. County of Franklin, Ohio,* 478 F.3d 341 (6th Cir. 2007)). LECI is dismissed from this action pursuant to §

5

1915(e)(2)(B).

Core Civic, though a private corporation, acts under color of state law for purposes of § 1983 because it performs the traditional state function of operating a prison. *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) ("A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983.") (citing *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996)). But Core Civic cannot be liable under § 1983 for the conduct of its employee Stover solely upon the basis of respondeat superior. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995) ("[I]n a § 1983 action liability cannot be based on a theory of respondeat superior.") (citing *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)). In order to hold Core Civic liable, Bason must show that its policies or customs resulted in the injuries Bason sustained as a result of Stover's alleged unconstitutional conduct. *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (a private entity that contracts to perform a traditional state function may be liable under § 1983 only if its official policies or customs resulted in injury to the plaintiff) (citing *Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir. 2005)). Bason makes no such allegations regarding Core Civic.

A similar analysis applies to Warden Fender, whom Bason alleges is "most responsible" for managing LECI and the staff. (Doc. No. 1 at 3.) A supervisor cannot be held liable under § 1983 solely upon a theory of respondeat superior. *Taylor* 69 F.3d at 80-81. In order for a supervisor to be liable, there must be some showing that the supervisor "'*at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*'" *Id*. (emphasis in original) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff alleges no facts from which this Court can infer that Fender implicitly

authorized, approved, or knowingly acquiesced in Stover's alleged unconstitutional conduct.

### *Plaintiff fails to state a plausible § 1983 claim for deliberate indifference*

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). That said, a prison official's duty is to ensure "'reasonable'" safety, not absolute safety. *Id*. at 844-45 (citation omitted).

In order to succeed on such a claim, a plaintiff must satisfy two requirements, both of which must be met. First, the substantial risk of harm must be objectively serious and second, the defendants were subjectively aware of the danger and failed to act to protect plaintiff despite their knowledge of a substantial risk of serious harm. *Id*. at 835-38.

With respect to the objective component, a plaintiff must allege that "absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm." *Amick v. Ohio Dep't of Rehab. & Correction*, 521 F. App'x 354, 361 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 836). "To satisfy the subjective component, a plaintiff must allege that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk." *Id*. (citing among authority *Farmer,* 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")).

Bason asserts two deliberate indifference claims. First that Stover's "inappropriate

homosexual comment" placed him at substantial risk of serious harm[4] from other inmates (Claim I) and that defendants failed to protect him from that harm (Claim II). Both fail to state a plausible claim for relief.

Bason alleges that he is openly transgender and generally alleges that "in prison," non-gay inmates may rob and assault gay inmates for no other reason than their sexual preference. (*See* Doc. No. 1 ¶¶ 20, 22.) Bason does not claim that Stover started the original rumor and, when Stover came to Bason's housing unit to handcuff Neal for fighting, he did not name or identify Bason who was not involved in the fight. Even with the benefit of liberal construction, Bason's factual allegations are insufficient to support his conclusory claim that Stover's statement plausibly supports an Eighth Amendment § 1983 claim, and Claim I is dismissed pursuant to § 1915(e)(2)(B).

Bason also fails to plausibly allege that defendants were deliberately indifferent to a substantial risk of serious harm to his safety in that they failed to protect him from the consequences of Stover's statements. Bason does not allege that prior to Stover's statement, he had been assaulted or threatened at LECI because of his transgender status or that he had raised any such concerns with prison officials at LECI. He does allege that he was in three fights with other inmates that he attributes to Stover's statement, but does not claim that he sustained any injuries as a result of these fights from which defendants may have inferred he was at risk of harm. Indeed, Bason admits that he did not inform prison officials about these altercations and,

---

[4] Bason also claims that Stover's statement violated various ODRC policies concerning gay inmates. (Doc. No. 1 ¶ 28.) But "[a]n alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation." *Robison v. Coey*, No. 2:15-CV-944, 2015 WL 5437175, at *10 (S.D. Ohio Sept. 14, 2015) (citing *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007)), *report and recommendation adopted,* No. 2:15-CV-944, 2015 WL 6164113 (S.D. Ohio Oct. 21, 2015).
.

in processing his grievances, they found no evidence of harm to him. (*Id*. ¶¶ 17, 26.) Even liberally construed, there are no allegations in the complaint from which this Court may infer that Bason sustained a substantial serious injury or that defendants were aware of facts from which they could infer that he was at substantial risk of serious harm and disregarded that risk. Claim II is dismissed pursuant to § 1915(e)(2)(B). *Cf. Salse v. Phillips*, No. 19-1067-JDT-CGC, 2019 WL 5310213, at *4 (W.D. Tenn. Oct. 18, 2019) (transgender inmate plausibly alleged an Eighth Amendment deliberate indifference claim against a prison official where inmate notified official on at least three occasions that another inmate was threatening him and had been violent against him, culminating in a violent attack against the transgender inmate).

### *Plaintiff fails to state a plausible § 1983 claim for denial of equal protection*

In his third claim for relief, Bason alleges that he was denied equal protection in violation of the Fourteenth Amendment on the grounds that defendants did not provide him with protection from serious physical harm because of his transgender status but "go out of their way" to protect non-gay inmates with protection under similar circumstances. "Although sexual orientation has not been recognized in this circuit as a suspect or quasi-suspect classification, homosexuals do constitute an 'identifiable group' for equal protection purposes." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (citation omitted).

"To state an equal protection claim in the prison context, Plaintiff must allege he was treated differently than other similarly situated prisoners." *Starr v. Bova*, No. 1:15 CV 126, 2015 WL 4138761, at *2 (N.D. Ohio July 8, 2015) (citing among authority *McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Center,* 481 U.S. 279, 292-93 (1987)). Here, Bason does not identify any non-gay prisoners that are similarly situated in all relevant respects. His conclusory claim of discrimination is insufficient to state a plausible Fourteenth Amendment § 1983 claim and Claim

III is dismissed pursuant to § 1915(e)(2)(B). *See e.g. Johnson v. Gidley*, No. 1:14-CV-394, 2014 WL 3543730, at *4 (W.D. Mich. July 17, 2014) ("Plaintiff does not identify any similarly-situated white prisoners. He claims that other white prisoners were allowed to work, but he does not identify any facts or circumstances about their work, or whether they were subject to the same decisionmaker. Thus, Plaintiff's conclusory assertion of discrimination is wholly insufficient to state a claim.") (citing *Iqbal,* 556 U.S. at 678).

### D. Conclusion

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**


*S/ Pamela A. Barker*
PAMELA A. BARKER
Date: December 27, 2019　　　　　　　　　　U. S. DISTRICT JUDGE